**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE PRUDENTIAL FINANCIAL, INC. DERIVATIVE LITIGATION** | **Civil Action No. 2:20-cv-12772-SRC-CLW**<br><br>**(Consolidated with Civil Action No. 2:20-cv-16231-SRC-CLW)** |
| **This Document Relates To:**<br><br>ALL ACTIONS. | **OPINION**<br><br>**FILED UNDER SEAL** |

**CATHY L. WALDOR, U.S.M.J**

## I.    Introduction

This matter comes before the Court on the motion of plaintiffs Donel Davidson and Robert Lalor ("Plaintiffs")[1] seeking limited discovery concerning the alleged lack of independence, good faith, and reasonableness of the investigation and decision of nominal defendant Prudential Financial, Inc.'s ("Prudential") Board of Directors (the "Board") to refuse Plaintiffs' litigation demands. ECF No. 31. The Honorable Stanley R. Chesler has referred the motion to the undersigned. The fifteen individual defendants (the "Individual Defendants") and Prudential (collectively, "Defendants") have opposed the motion, Plaintiffs have filed a reply, the parties have submitted supplemental briefing as directed, and the Court conducted oral argument on March 15, 2022. ECF No. 37, 38; 42-44, 47, 49. Upon careful consideration of the parties' arguments and for the reasons stated in this Opinion, Plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

---

[1] This action was brought by Pekin Police Pension Fund ("Pekin"), for which Donel Davidson has been substituted as plaintiff. *See* ECF No. 1, 4. It was then consolidated with *Robert Lalor v. Charles F. Lowrey, et al.*, Civil Action No. 2:20- cv-16231-SRC-CLW ("*Lalor*"), with the instant matter serving as the lead case. ECF No. 10. References herein to "Plaintiffs" may encompass Pekin, Mr. Davidson and/or Mr. Lalor.

## II.   **Background**

This is a stockholder derivative action brought on behalf of Prudential, a large financial services and investment manager in which plaintiffs Davidson and Lalor hold stock and of which the Individual Defendants are directors and/or officers. *See* ECF No. 1 (the "Complaint") at ¶¶ 15-31; ECF No. 3-2 at ¶ 1; *Lalor*, ECF No. 1 at ¶ 16. Plaintiffs allege that

> [f]rom February 15, 2019 to August 2, 2019, the Individual Defendants made a series of improper statements in Prudential's public filings with the SEC, during earnings conference calls, and to analysts. . . . The truth began to emerge on July 31, 2019, as the Company announced its second quarter 2019 financial results . . . . In the wake of these disclosures, Prudential's stock plunged more than 12.5%, or $12.75 per share, on August 2, 2019 . . . erasing over $5.12 billion in market capitalization. Before the truth was revealed, between February 2019 and July 2019, while the Company's stock price was inflated due to the improper statements, Prudential repurchased 10.97 million shares of its own common stock. This repurchase of inflated stock cost the Company $1.07 billion.

Complaint at ¶¶ 5-8 (emphases removed); *see generally id.* at ¶¶ 53-97. Plaintiffs claim these actions have "resulted in hundreds of millions of dollars in damages to Prudential's reputation, goodwill, and standing in the business community" as well as "have exposed Prudential to hundreds of millions of dollars in potential liability for violations of state and federal law." *Id.* at ¶ 1. They bring claims sounding in Section 10(b) of the Securities Exchange Act, breach of fiduciary duty, waste of corporate assets and unjust enrichment. *Id.* at ¶¶ 106-32.

As indicated, Plaintiffs are suing the Individual Defendants "derivatively in the right and for the benefit of Prudential". *Id.* at ¶ 98. To this end, in April 2020, acting per the New Jersey Business Corporation Act (the "NJBCA"), Pekin sent a demand letter to the Board claiming the above wrongdoings and demanding that the Board investigate and remedy them, including bringing legal proceedings. *See* N.J. Stat. § 14A:3-6.3; Complaint at ¶ 101; ECF No. 1-2. Pekin was then advised that the Board had formed a special committee (the "Committee"), which had

2

retained the law firm of Cravath, Swaine & Moore LLP ("Cravath") to investigate Plaintiffs' allegations. Complaint at ¶ 102; ECF No. 1-3. After the passage of the statutory ninety-day period without further action, *see* N.J. Stat. § 14A:3-6.3, Pekin filed suit.

Several months later, Cravath sent Pekin a letter advising that upon the Committee's review, the Board determined that

> (a) the Company has no sound legal basis to assert claims against any current or former directors, officers or other employees of the Company in connection with the matters raised by the Demands; (b) even if there were a sound legal basis to assert claims, any such litigation would not be in the best interest of the Company and its stockholders; (c) the demands in the Demands that the Company commence such litigation should therefore be rejected; and (d) the other demands in the Demands for action by the Company, including the institution of certain corporate governance reforms, should also be rejected.

ECF No. 20-4, Exhibit G (the "Refusal Letter"). Plaintiffs then sought to obtain from the Board certain information underlying this decision; the Board denied this request. ECF No. 31-3; 31-4.

Shortly thereafter, Defendants moved to dismiss the Complaint. ECF No. 19. They argued that the investigation and determination discussed in the Refusal Letter satisfied the statutory requirements for dismissal set forth in the NJBCA; namely, that a majority vote of independent directors present at a meeting of the board of directors determined in good faith, after conducting a reasonable inquiry upon which its conclusions are based, that the maintenance of the derivative proceeding is not in the best interests of the corporation. *See generally* N.J.S.A. §§ 14A:3-6.5; ECF No. 19.

On the present motion, Plaintiffs argue that because the Refusal Letter "provides none of the facts required to make even the barest prima facie showing that the Board conducted a reasonable, good faith, and independent investigation", ECF No. 31-1 at 4, Plaintiffs are unable to argue in opposition to Defendants' dismissal motion that the Board (and/or Committee, which

comprised three Board members who are also Individual Defendants) lacked any of the above. Plaintiffs thus request that the Court order Defendants to produce information concerning the Board's reasonableness, good faith, and independence (or lack thereof) to enable Plaintiffs to oppose Defendants' motion. *See generally* ECF No. 31-1.

## III.    <u>Legal Standard</u>

As Plaintiffs' instant motion (as well as Defendants' dismissal motion) grows from N.J.S.A. § 14A:3-6.5 ("Section 6.5"), some discussion of this statutory provision is in order. In 2013 the New Jersey legislature repealed N.J.S.A. § 14A:3-6, *repealed by* L.2013, c. 42, § 10, *eff.* April 1, 2013 (entitled "Provisions relating to actions by shareholders") and enacted a new series of laws, which are "largely based on . . . the Model Business Corporation Act, with substantial additions based on section 7.44 of Chapter 156D of the Massachusetts Business Corporation Law."[2] 2012 Bill Text NJ A.B. 3123. The new laws are significantly more robust than the old one, providing "a new set of regulations concerning derivative proceedings." *Id.* Among these regulations is Section 6.5, entitled "Conditions for dismissal of proceeding", which states that subject to certain limitations,

> a derivative proceeding shall be dismissed by the court on motion by the corporation if the court finds that . . . [*e.g.*, a majority vote of independent directors] has determined in good faith, after conducting a reasonable inquiry upon which its conclusions are based, that the maintenance of the derivative proceeding is not in the best interests of the corporation . . . .

N.J.S.A. § 14A:3-6.5(1)(a). Plaintiffs can avoid dismissal only if "the court finds that the[se] requirements . . . have not been met" or by "alleg[ing] with particularity facts rebutting the facts contained in the corporation's filing." *Id.* at § 5(b)(1).

---

[2] As discussed below, Section 6.5 is the analogue to Section 7.44 of the Massachusetts law.

The parties have briefed the present motion under subsection (5)(c) of Section 6.5, which provides:

> All discovery proceedings shall be stayed upon the filing by the corporation of its motion to dismiss and the filing required by this subsection until the notice of entry of the order ruling on the motion. Notwithstanding the foregoing stay of discovery, the court, on motion and after a hearing, may order that specified and limited discovery be conducted if plaintiffs make a good cause showing of alleged facts which evidence a lack of independence by the person or group making the determination for the corporation or a lack of a good faith determination. Limited discovery shall not include the work product, privileged communications, or testimony of attorneys who advised or assisted the person or group making the determination.

N.J.S.A. § 14A:3-6.5(5)(c) ("subsection 5(c)").

In assessing the parties' arguments, the Court was given pause by a statement from the Third Circuit Court of Appeals in *Fagin v. Gilmartin*, 432 F.3d 276 (3d Cir. 2005) concerning a rule set forth by the New Jersey Supreme Court in *In re PSE & G S'holder Litig.*, 173 N.J. 258 (2002). The *PSE & G* Court ruled that "shareholders in [certain] circumstances [*i.e.*, facing dismissal motions based on demand refusal] must be permitted access to corporate documents and other discovery 'limited to the narrow issue of what steps the directors took to inform themselves of the shareholder demand and the reasonableness of its decision.'" *Id.* at 286 (quoting *In re PSE & G S'holder Litig.*, 315 N.J. Super. 323, 337 (Super. Ct. 1998)) (the "*PSE & G* Rule"). The *Fagin* court wrote as follows:

> Although the New Jersey Supreme Court's opinion in *PSE & G* makes limited discovery a mandatory part of its demand-refused procedure, this procedural state rule does not control in federal court. Federal Rule 23.1 governs shareholder derivative actions. . . . [W]e hold that discovery in the demand-refused context is procedural, so federal law applies here. Because federal law applies, the District Court is not bound by New Jersey's mandatory-discovery rule . . . .

Id. at 285 n.2 (citation omitted). Because *Fagin* thus signals that a rule substantially similar to subsection 5(c) does not apply in federal court, the Court directed the parties to submit supplemental briefing on the threshold issue of whether subsection 5(c) controls here.[3] *See* ECF No. 42. Defendants argued that subsection 5(c) applies; Plaintiffs took no position on the issue and used the supplemental briefing to rehash arguments already discussed in their motion papers. ECF No. 43, 44-1.[4]

While the Court will conclude that subsection 5(c) governs the current dispute, it must be noted that the *PSE & G* Rule and subsection 5(c) are considerably hard to distinguish, as both make "limited discovery a mandatory part of [the] demand-refused procedure" within the context of plaintiffs responding to a dismissal motion premised upon demand refusal. *See Fagin*, 432 F.3d at 285 n.2 (citing *In re PSE & G S'holder Litig.*, 315 N.J. Super. 323, 326 (Super. Ct. 1998)). Yet the Court will not belabor the comparison between the rule and the statute.[5] The *PSE & G* Rule is not before the Court; subsection 5(c) is. And the Court answers in the affirmative the limited question of whether subsection 5(c) should apply here. Most notably, the New Jersey legislature expressly intended for the expanded NJBCA to "apply to actions brought in state or federal court". N.J.S.A. § 14A:3-6.9. Moreover, application of the Third Circuit's formulation of the *Erie*

---

[3] Incidentally, the Honorable Lois H. Goodman recently directed supplemental briefing on essentially the same issue in an unrelated case in which plaintiffs are represented by the same counsel as herein. *See Bynum v. Gorsky*, Civil Action No. 3:19-cv-18874-FLW-LHG ("*Gorsky*"), ECF No. 55-57.

[4] This is somewhat surprising, being that the same counsel for Plaintiffs submitted substantive briefing on this issue to Judge Goodman. *Gorsky*, ECF No. 57-1. In any event, the *Gorsky* plaintiffs' (and defendants') position aligns with Defendants' here.

[5] To be certain, there are possible grounds for distinction between the two. For example, "New Jersey limits the rule-making power of its Supreme Court to 'practice, procedure, and administration,' and dictates that 'in areas of substantive law (as opposed to procedural law[]), court rules must yield to legislation.'" *Hirschfeld v. Beckerle*, 405 F. Supp. 3d 601, 610 (D.N.J. 2019) (quoting *State ex rel. Y.S.*, 934 A.2d 1140, 1144 (N.J. Super. Ct. Ch. Div. 2007) and citing cases).

doctrine[6] as set forth in *In Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000) instructs that subsection 5(c) is a substantive state law applicable in federal court. *See, e.g.*, *Hanna v. Plumer*, 380 U.S. 460, 471 (1965) (under *Erie*, "federal courts are to apply state 'substantive' law and federal 'procedural' law"). As summarized in *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258 (3d Cir. 2011):

> [the *Chamberlain* court] set out a three-part test to determine whether a state law is substantive or procedural for purposes of compliance with the *Erie* Rule. First, a court must determine whether there is a direct collision between a federal rule and the state law or rule that the court is being urged to apply. If there is a direct conflict, the federal court must apply the federal rule and reject the state rule. If there is no "direct collision," then the court applies the *Erie* Rule to determine if state law should be applied, by evaluating the second and third prongs of the *Chamberlain* test. In the second part of the *Chamberlain* test, a court must determine whether the state law is outcome-determinative and whether failure to apply the state law would frustrate the twin aims of the *Erie* Rule to discourage forum shopping and avoid inequitable administration of the law. Third, the court must consider whether any countervailing federal interests prevent the state law from being applied in federal court.

*Id.* at 262 (discussing *Chamberlain*, 210 F.3d at 159-61) (citation omitted).

Here, "Rule 23.1 does not address discovery, neither allowing nor prohibiting it, so [subsection 5(c)] does not directly conflict with Rule 23.1." *Fagin*, 432 F.3d at 286 n.2. Next, plaintiffs generally are not entitled to discovery before a Rule 12(b)(6) ruling because "a motion to dismiss . . . tests the legal sufficiency of a claim, and therefore may be decided on its face without extensive factual development". *Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010) (citing cases declining to permit discovery bearing upon motions to dismiss). Therefore,

---

[6] While primarily framed to apply to courts sitting in diversity, "[t]he *Erie* doctrine applies in federal question as well as diversity cases." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 643 F. Supp. 1217, 1221 (D.N.J. 1986) (discussing *Maternally Yours v. Your Maternity Shop*, 234 F.2d 538, 540 n. 1 (2d Cir. 1956)).

application of subsection 5(c) very well could alter the outcome of a case, and almost certainly would lead to forum shopping if applied only in state courts. Finally, the Court finds no countervailing federal interests precluding application of state law here.

The court in *Lerner v. Prince*, 119 A.D.3d 122 (N.Y. App. Div. 1st Dep't 2014) considered the applicability of Delaware law governing derivative plaintiffs' entitlement to discovery, framing the issue as follows:

> We find that plaintiff's right to discovery in this demand-refused case is a substantive question, rather than a procedural one, and therefore is governed by [state] law. Although New York courts have applied the law of the forum when deciding matters, such as discovery, affecting the conduct of the litigation, that this case is a purported derivative action places it into a different context. The demand requirement is based on the 'bedrock principle' of Delaware law that a corporation's directors, and not its shareholders, manage the corporation's business.[7] Thus, the Delaware law on discovery is an integral part of the legal framework governing derivative proceedings; indeed, it is inextricably intertwined with the decision to act or decline to act on a shareholder demand. . . . The decision whether to permit discovery once directors have refused a demand is therefore a substantive question, going directly to the basis of the purported derivative suit.

*Id.* at 128.

For the foregoing reasons, the Court will assess this matter under subsection 5(c).

## IV.  **Related Authority**

### a.  **Scope of Relevant Authority**

In their opposition brief, Defendants observe that much of Plaintiffs' cited authority predates the 2013 statutory amendment. While true, this tells only half the story: subsection 5(c) has received scant treatment by reviewing courts; to this end, *neither* party provides any case law

---

[7] Similarly, under New Jersey law, "[t]he business and affairs of a corporation [are generally] managed by or under the direction of its board". N.J.S.A. § 14A:6.1(1).

8

substantively construing the specific provision upon which this motion hinges (nor for that matter is the Court aware of any such authority), making this largely a matter of first impression.

The Court therefore must decide what weight, if any, to afford matters that approached the question of derivative plaintiffs' entitlement to discovery without relying on statutory parameters similar to those in subsection 5(c) (*i.e.*, the majority of cases cited by both parties). Importantly, as the pre-2013 New Jersey statute did not address the discovery considerations later codified in subsection 5(c), *see* N.J.S.A. 14A:3-6, the jurisprudence from that time (for example, the *PSE & G* Rule) is a creature of the common law. On this point, one leading treatise explains that when

> a statute revises the common law and is clearly designed as a substitute therefor, the common law is repealed. The legislature may supersede the common law without an express directive to that effect, as by adoption of a system of statutes comprehensively dealing with the subject to which the common-law rule related. Thus, where a statute purports to be a revision of the whole subject, any and all common law of which a statutory provision not included in the revision was declaratory is thereby abrogated.

15A Am. Jur. 2d Common Law § 16. As a result, to the extent the revised NJBCA — and in particular, subsection 5(c) — was meant to supplant the common law, New Jersey cases predating the 2013 statutory amendment (as well as cases from jurisdictions where no statute governs this issue) are of limited utility in the wake of the new law.

The Court finds this to be the case. The assembly bill concerning the 2013 amendment makes clear that the new statute was to "repeal[] the current law concerning actions brought in the right of a corporation by a shareholder, and supplement[] the 'New Jersey Business Corporation Act' with a new set of regulations concerning derivative proceedings." 2012 Bill Text NJ A.B.

3123.[8] Thus, the 2013 amendment was designed to "comprehensively deal[ ]" with shareholder derivative proceedings; in other words, the "statute purports to be a revision of the whole subject".[9]

The New Jersey Appellate Division's discussion in *Feuer v. Merck & Co.*, 455 N.J. Super. 69 (App. Div. 2018) is instructive on this point. Most of *Feuer* concerns a shareholder's right to inspect a corporation's books and records under Section § 14A:5-28 of the NJBCA ("Section 5-28"). *See generally id.* As immediately relevant, the *Feuer* court discussed shareholders' pre-statute, common law right to inspection of books and records after the passage of Section 5-28. It wrote that "[h]ad the Legislature intended to preserve the entire body of common law rights, it could have expressly said so." *Id.* at 86 (contrasting the Open Public Records Act, which provides, "[N]othing contained in P.L.1963 shall be construed as affecting in any way the common law right of access to any record . . . .") (citation omitted). The court noted that "the drafters of . . . the 1960 Model Business Corporation Act, upon which New Jersey's statute is based, expressed the intention to craft a 'comprehensive' statute." *Id.* at 86-87 (concluding "that a 'comprehensive' statute is intended to occupy the field, and supplant a coexisting common law inspection regime outside the statute"). Like Section 5-28, subsection 5(c) opts not to preserve common law rights to access and is "largely based" upon the "comprehensive" Model Business Corporation Act. *Feuer* thus further supports the notion that generic common law-derived authority cannot directly control the present question.

---

[8] The fact that the new law "retain[ed] the substantive provisions of the repealed section", 2012 Bill Text NJ A.B. 3123, does not alter this conclusion, being that the previous version of the state law did not address discovery.

[9] With this said, a somewhat more accurate formulation may be that the entitlement to discovery set forth in *PSE & G Rule* still exists; by virtue of subsection 5(c), however, "the Legislature conditioned such pre-motion discovery"). *Feuer v. Merck & Co.*, 455 N.J. Super. 69, 81-82 (App. Div. 2018).

Of course, none of this would matter if subsection 5(c) provided a garden-variety discretionary standard. But the opposite is true. The statute is decidedly specific, and equally importantly, places an explicit burden on plaintiffs to present evidence justifying the discovery they seek, fortifying the difficulty in extrapolating from matters proceeding under rubrics lacking such characteristics. *Compare*, *e.g.*, *id.* at 82-83 ("[Plaintiff] is not entitled to broad-ranging inspection under the statute just because it would be useful . . . . We are bound by the plain language of the statute.") *with Ryskamp v. Looney*, 2011 U.S. Dist. LEXIS 41506, at *9 (D. Colo. Apr. 15, 2011) ("[I]n some cases the interests of justice are best served by requiring the production of a limited amount of information and documentation on the strongly-contested issues raised in motions to dismiss derivative actions."). The Court decidedly cannot defer to (the often-indistinct) interests of justice; it is instead bound by the strictures of the statute.

As an example of this principle in action, Plaintiffs rely heavily on *Sherry v. Chioini*, 219 F. Supp. 3d 608 (E.D. Mich. 2016), where the court wrote that "if, at the time the motion is filed, the shareholder lacks a reasonable amount of information concerning the disinterested person's investigation . . . then a court should permit the shareholder to take some limited discovery before ruling on the motion." *Id.* at 622. Reasonable as this sounds, *Sherry* proceeded under Mich. Comp. Laws Serv. § 450.1495 — a statute that, like Section 6.5, concerns "Dismissal of derivative proceeding[s]", but, unlike the New Jersey law, does not specifically discuss discovery in response to a dismissal motion, let alone place the burden upon plaintiffs to make a good cause showing to obtain it. The Court therefore hesitates to rely on matters like *Sherry* in deciding the present dispute, where the applicable statute very clearly mandates what Plaintiffs must do to obtain their requested discovery.

As aptly written by the court in *Caspary v. La. Land & Expl. Co.*, 560 F. Supp. 855 (D. Md. 1983) and quoted in *Feuer*, the

> comprehensive statutory scheme was intended to strike a delicate balance between a shareholder's right[s] . . . and management's need to conduct day to day business without undue interference. To resurrect ancient rules regarding the precise subject matter the legislature has sought to regulate would be to run the risk of tipping the balance one way or the other.

*Id.* at 857; *Feuer*, 455 N.J. Super at 87. In the interest of not "resurrect[ing] ancient rules" that have since been specifically and comprehensively regulated by statute, the Court will decline to rest its primary reasoning upon matters that do not involve statutory schemes similar to subsection 5(c).[10]

As noted, the resulting universe of directly applicable case law is decidedly limited and includes no authority construing subsection 5(c) itself. The Court therefore next turns to the Massachusetts statute upon which Section 6.5 is based.

**b. The Massachusetts Statute**

Under Massachusetts law, after a motion to dismiss has been filed, discovery is stayed except that "the court, on motion and after a hearing and for good cause shown, may order that specified discovery be conducted." ALM GL ch. 156D, § 7.44.

---

[10] No less important, and as Plaintiffs correctly point out, the burden on the present motion must be lower than that necessary to defeat motions to dismiss, which provide the backdrop for much of the parties' cited authority. If the standards were the same, it would be unnecessary for a derivative action plaintiff to ever seek limited discovery to oppose a dismissal motion – they would simply oppose dismissal on the same grounds that would entitle them to discovery. *Cf., e.g., Hoffman v. Kramer*, 362 F.3d 308, 318 n.7 (5th Cir. 2004) ("Section 501(b)'s 'good cause' requirement demands considerably more of plaintiffs than to survive a Rule 12(b)(6) motion. Otherwise, that part of the statute would be superfluous . . . ."). Accordingly, the Court may not directly infer in Defendants' favor from matters granting motions to dismiss (although, the chasm is not necessarily too large to render such matters entirely unhelpful). Conversely, it follows *a fortiori* that circumstances sufficient to defeat a motion to dismiss likewise suffice to warrant discovery under subsection 5(c).

Defendants cite two matters construing the Massachusetts statute. One is *Curbow Family LLC v. Morgan Stanley Investment Advisors*, 2012 NY Slip Op 22197 (N.Y. Sup. Ct. 2012), where the court, relying upon *Pinchuck v. State St. Corp.*, 28 Mass. L. Rep. 37 (Suffolk Cty. Sup. Ct. Jan. 16, 2011) and *Hecht v. Termeer*, Civ. No. 2010-617-BLS1 (Mass. Sup. Ct., Mar. 8, 2011), framed the statute as creating "a narrow exception for . . . the rare case in which a plaintiff may offer evidence of some unusual circumstances that would indicate some serious risk of injustice in the absence of narrowly targeted discovery". *Id.* at 2 (quoting *Pinchuck*). However, the facts of all three of these trial court matters are readily distinguishable in that the plaintiffs there sought wide-ranging discovery unrelated to good faith or independence. *See, e.g.*, *id.* at 2 ("Since the plaintiffs are seeking these materials . . . in order to challenge the conclusions of the SLC,[11] not the trustees' independence or good faith determination after conducting a reasonable inquiry—the grounds specified in the Massachusetts statute[—]there does not appear to be 'good cause shown' under section 7.44 (d)."). Because this is not the case here, this triumvirate of cases provides little guidance.

*Halebian v. Berv*, 869 F. Supp. 2d 420 (S.D.N.Y. 2012) likewise proceeded under the Massachusetts statute and is likewise distinguishable. The plaintiff there "fail[ed] to specify the particular facts that he seeks from discovery", *id.* at 440, an infirmity from which Plaintiffs' application does not suffer. And as in *Curbow*, the plaintiffs in *Halebian* were in possession of "thousands of pages detailing the backgrounds of the directors at issue, as well as the extensive efforts made by the independent counsel in preparing its review of the demand for the committee and the [b]oard." *Id.* at 439 (quoting *Halebian v. Berv*, 631 F. Supp. 2d 284, 298 (S.D.N.Y. 2007)).

---

[11] The acronym "SLC" commonly refers to special litigation committees.

In sum, the cited authority concerning the analogous Massachusetts statute offers limited assistance on the present motion. The Court therefore defers to more general analytical principles.

**V.    <u>Plaintiffs' Right to Discovery as to the Board's Alleged Lack of Independence</u>**

As to the issue of independence, the NJBCA provides that

> [a] director shall be considered independent for the purposes of this section if the director has:
>
> (i)    no economic interest in the challenged act or transaction material to him or her, other than an economic interest that is shared by all shareholders generally; and
>
> (ii)   no material, personal, or business relationships with the defendant directors or officers who have a material interest in the act or transaction challenged.

N.J.S.A. § 14A:3-6.5(7)(a).

Plaintiffs argue in their motion that Defendants have not provided sufficient information supporting the voting directors' independence. Defendants correctly note in opposition that their dismissal motion contained (i) excerpts from Prudential's 2020 and 2021 Schedule 14A proxy statements which certified the directors' independence under the New York Stock Exchange listing standards; and (ii) questionnaires completed by each director which include responses to questions regarding the directors' material, personal, and business independence. *See* ECF No. 20-1, 2, 3; ECF No. 20-4 at Ex. D, E. As these materials plainly speak to the directors' independence, Plaintiffs are constrained to argue on reply that there is no indication that the Committee relied on these materials in determining whether the directors were truly independent.

This argument fails. The materials submitted in support of Defendants' motion to dismiss quite plainly demonstrate that the directors who chose to reject Plaintiffs' demands had neither an economic interest in the acts at issue nor a relationship with individuals who do. Moreover, even assuming the Committee did not in fact consider the questionnaires and proxy statements in

determining the Board's independence, this likely still would not satisfy Plaintiffs' affirmative statutory burden to allege facts evidencing a lack of independence.

*Abrano v. Abrano*, 2016 Mass. Super. LEXIS 808 (Suffolk Cty. Sup. Ct. Nov. 30, 2016), cited by Plaintiffs on reply, is helpful by way of contrast. The *Abrano* court considered a motion to dismiss under the Massachusetts statute. In finding a lack of independence warranting denial of the motion, it wrote that it

> shares plaintiffs' concerns as to . . . the extent to which [the board and committee members] are truly independent. . . . [These members] were nominated to the Board of Directors by [the individual defendant's spouse] following the plaintiffs' ouster from their Company positions. According [to] the Verified Complaint, [defendant's spouse] at [individual defendant's] direction had the two men placed on the Board simply to "rubberstamp" decisions made by [defendant]. Although this may not be true, the fact remains that both men are personal friends of [individual defendant], and the Company where [one member] served as CEO owes [individual defendant] some amount of money. Given that [individual defendant] was the primary target of the Demand's allegations, there is some basis to question their ability to independently assess the validity of those allegations.

*Id.* at *6-7. This was in addition to the fact that the law firm conducting the investigation represented the individual defendant in proceedings that resulted in him being banned from the defendant company. *Id.* at *5-6.

These are "alleged facts which evidence a lack of independence". Plaintiffs' speculations are not. The portion of Plaintiffs' motion seeking discovery as to the Board's alleged lack of independence therefore must be denied.

## VI.    Plaintiffs' Right to Discovery as to the Board's Alleged Lack of Good Faith

As opposed to independence, good faith is not defined in Section 6.5; the Court therefore must look elsewhere for guidance. "In determining good faith, 'the court's inquiry is not into the substantive decision of the board, but rather is into the procedures employed by the board in

making its determination.'" *George Leon Family Tr. v. Coleman*, 2014 U.S. Dist. LEXIS 86303, at *20 (D.N.J. June 25, 2014) (quoting *PSE & G*, 173 N.J. at 291). These procedures require directors "to inform themselves of all material information reasonably available to them." *Barovic v. Ballmer*, 72 F. Supp. 3d 1210, 1215 (W.D. Wash. 2014) (citing *Mt. Moriah Cemetery on Behalf of Dun & Bradstreet Corp. v. Moritz*, 1991 Del. Ch. LEXIS 68, at *10 (Del. Ch., Apr. 4, 1991), *aff'd* 599 A.2d 413).

This is a notably slippery standard. As aptly summarized by the court in *Boland Trane Assocs. v. Boland*, 2012 Md. Cir. Ct. LEXIS 2 (Md. Cir. Ct. 2012),

> the choice of people to interview or documents to review is one on which reasonable minds may differ. Inevitably, there will be potential witnesses, documents and other leads that the SLC will decide not to pursue. As such, there is no rule of general application that an SLC must interview every possible witness who may shed light on the conduct that is the subject of the demand, or the sources of information that must be examined. Of course, the SLC must investigate the theories of recovery asserted in the plaintiffs['] derivative complaint, and obtain and review information that is relevant and material to the subject matters of its inquiry. Further, the SLC cannot simply accept the defendants' version of disputed facts without consulting independent sources to verify the defendants' assertions. Finally, the SLC must understand and properly apply the relevant case law.

*Id.* at *32-34 (citations omitted). "[U]ltimately the question is whether the board acted on an informed basis." *Gould v. Moynihan*, 275 F. Supp. 3d 487, 496 (S.D.N.Y. 2017). Returning to subsection 5(c)'s standard, Plaintiffs' motion requires them to present evidence demonstrating the Committee's failure to do the above.

Plaintiffs satisfy this burden. The Refusal Letter is decidedly opaque as to how and why the Committee and Board decided to reject Plaintiffs' demands. It describes in the most perfunctory terms the following: the Board created the Committee; Cravath reviewed documents, conducted interviews, and communicated with the Committee; the Committee reached its

conclusions and, along with Cravath, conveyed its recommendations to the Board; and the Board voted to reject the demands. The Letter is littered with vague, adjective-heavy descriptions such as "the Committee asked numerous questions of Cravath [and] engaged in active discussions with both Cravath and each other". The fact that the letter does not meaningfully specify the documents reviewed leaves it unclear whether the Committee members "inform[ed] themselves of all material information reasonably available to them." *Barovic*, *supra*. And there is no suggestion that the Committee sought independent verification of Defendants' version of disputed facts. *See generally* Refusal Letter.

Nor is there any indication that the Board analyzed the relevant facts under the applicable law in reaching the decision to reject Plaintiffs' demands. To the contrary, the portion of the letter entitled "Board Deliberations and Determinations" consists of a listing of individuals present at the final meeting and a statement that "Ms. Poon and Cravath described the Committee's process, findings, observations and Recommendations. Following discussion, the independent members of the Board unanimously adopted all of the Recommendations as resolutions of the Board, with Mr. Falzon and Mr. Lowrey recusing themselves from the vote." *See* Refusal Letter at 3-4. Defendants cite *PSE & G* for the notion that the bad faith inquiry is whether the "investigation has been so restricted in scope, so shallow in execution, or otherwise so *pro forma* or half hearted as to constitute a pretext or sham". 173 N.J. 258 at 292 (quoting *Stoner v. Walsh*, 772 F. Supp. 790, 806 (S.D.N.Y. 1991)). The Court finds this to be an apt description of the procedures described in the Refusal Letter.

It also stands to reason that a description of a sufficiently thorough investigation into alleged wrongdoing would reference conversations with individuals other than those connected to the purported misdeeds. With one possible exception, however, the only individuals listed as being

interviewed are Prudential employees, and the only three whose identities are known are named defendants.[12] *See* Refusal Letter at 2. This "failure to interview anyone outside the company regarding the [demands] does permit the inference that the . . . investigation was not conducted in good faith and was not reasonable." *Barovic v. Ballmer*, 72 F. Supp. 3d at 1217.

The court in *City of Orlando Police Pension Fund v. Page*, 970 F. Supp. 2d 1022 (N.D. Cal. 2013), reached a similar conclusion where the special litigation committee

> refused the [litigation] demand in a six-page letter to plaintiff. . . .
> [T]he conclusory nature of the demand refusal letter [leads] the court
> [to] find[] that defendants have effectively insulated its investigation
> from any scrutiny, which is unreasonable. . . . [T]he [refusal letter]
> merely recites the conclusion that refusal was proper without
> explaining how the committee reached that conclusion. [I]n the
> absence of the court's or plaintiff's own review of the report itself,
> the court cannot find that the investigation was conducted
> reasonably and in good faith. Defendants essentially ask plaintiff
> and the court, via the [refusal letter], to "take their word for it"
> regarding the thoroughness of the report. . . . [Additionally,] any
> reasonable investigation of plaintiff's demand should have included
> an interview of . . . someone with . . . knowledge of the [related]
> DOJ[ ] investigation.

*Id.* at 1026, 1031-32 (citation omitted). The court reached this conclusion notwithstanding that the refusal letter — not unlike the one here — provided "that the committee's investigation included extensive document review and interviews of 17 individuals, and that the committee met six times before" deciding to reject the litigation demand. *See id.* at 1030; *see also Brinckerhoff v. JAC Holding Corp.*, 263 A.D.2d 352, 353 (N.Y. App. Div. 1st Dep't 1999) (affirming denial of motion to dismiss where "the report of the special committee was a mere two pages in length with respect to the subject transaction, and failed to document the special committee's procedures, reasoning and conclusions, thus effectively insulating its investigation from scrutiny by the courts") (citing

---

[12] Defendants also "spoke with" a representative of Prudential's external auditor. Refusal Letter at 2.

*In re Par Pharm., Inc. Derivative Litig.*, 750 F. Supp. 641, 647 (S.D.N.Y. 1990)); *Abrano*, 2016 Mass. Super. LEXIS 808 at *5-7 (no good faith determination after conducting a reasonable inquiry where "[a]lthough [the committee members] were appointed to investigate the allegations of the Demand, their affidavits are decidedly vague as to what they themselves did. . . . [The retained law firm] did not interview the plaintiffs, [an individual who worked for the Company during the relevant time period] or [individual defendant]. [The law firm] also did not undertake a review of . . . materials which seem to be directly relevant to the issues raised by the Demand."). These descriptions of demand refusal procedures and conclusions call to mind those described in the Refusal Letter.

It must be noted that — in addition to Plaintiffs' evidence on this issue being stronger than that concerning independence — there is an important conceptual difference between the two. While subsection 5(c) charges Plaintiffs with affirmatively presenting "alleged facts" as to the lack of both items, only in the case of good faith must Plaintiffs truly prove a negative. *Cf.* N.J.S.A. § 14A:3-6.5(7)(a). As a result, that which a barebones demand refusal letter does *not* say about good faith constitutes sufficient evidence of Defendants' failure to make a good faith determination — at least enough to warrant discovery on the matter. Indeed, the Refusal Letter expressly undertakes — and fails — to sufficiently describe the Board's process in determining the reject the litigation demands.

This conclusion tracks multiple courts' observations that failures by defendants to adequately explain their decision-making process amounts to a board improperly "insulat[ing] its investigation from any scrutiny, which is unreasonable." *City of Orlando*, *supra; see also Brosz v. Fishman*, 2016 U.S. Dist. LEXIS 180011, at *13 (S.D. Ohio Dec. 29, 2016) ("[A] board cannot insulate its investigation from scrutiny. . . . [W]hen a plaintiff exhausts available remedies and still

has minimal access to the reasons underlying the board's decision, that fact raises a concern about the board's good faith and reasonableness in rejecting the demand") (citing *City of Orlando*, 970 F. Supp. 2d at 1030-31). While a parallel conclusion does not necessarily flow with regard to independence — the lack of which must be demonstrated somewhat more affirmatively — the Court will not "take [Defendants'] word for it" as to the Board's good faith.

The Court therefore concludes that Plaintiffs have satisfied their burden of demonstrating the Board's alleged lack of good faith.[13] Importantly, while subsection 5(c) opens the door to discovery upon a showing of a lack of independence or good faith, it does not mention reasonableness. Notwithstanding, the statute does not limit the scope of discovery to that concerning independence or good faith; instead providing more generally for "specified and limited discovery" if plaintiffs provide the requisite evidence. This, combined with the fact that courts commonly consider good faith and reasonableness in tandem, *see, e.g.*, *Gould*, 275 F. Supp. 3d at 495, permits the Court to conclude that Plaintiffs' showing as to the lack of good faith likewise entitles them to discovery into the Board's alleged failure to conduct a reasonable inquiry. The Court now proceeds to determine the scope of this discovery.

## VII.    <u>Scope of Discovery</u>

The Court recently held oral argument on the limited issue of "the breadth of . . . discovery, assuming *arguendo* that Plaintiffs are entitled to it in the first instance." ECF No. 47, 49.[14]

---

[13] The Court expressly does not reach a finding on this or any other issue under standards governing Defendants' motion to dismiss (or, for that matter, any other standard aside from subsection 5(c)). *See* footnote 10, *supra*.

[14] Defendants objected that this agenda "skips a necessary step under New Jersey law"; namely, that "Defendants cannot discuss the parameters of discovery that are supposed to be 'specified and limited' without understanding on what issues, if any, Plaintiffs have made the required factual showing." ECF No. 48. By the time argument was scheduled, however, the Court had reached a determination based upon the briefing as to the threshold question of Plaintiffs' entitlement to discovery. It therefore limited oral argument to obviate the need for the parties to argue matters already decided.

Plaintiffs' motion seeks fourteen categories of paper discovery. *See* ECF No. 31-1 at 32-34. The second, third, and fourth enumerated items speak to independence; in accordance with the discussion above, the Court denies Plaintiffs' request for these materials. Items 6, 7 and 10-13 seek:

> Transcripts, notes, and summaries of interviews conducted as part of the Special Committee's or Cravath's investigation into the Demands.
>
> Documents provided to, received, or reviewed by the Special Committee, Board, or Cravath.
>
> Documents and communications concerning any actual, proposed, or prospective action or meeting, whether formal or informal, of the Board or the Special Committee concerning the investigation into the Demands.
>
> Minutes of any meeting, formal or informal, of the Board or the Special Committee concerning the investigation into or evaluation of the Demands.
>
> Any report made or provided to the Board concerning the Special Committee's investigation, including any documents referenced in any such report.
>
> Documents provided to, received, or reviewed by the Board in adopting the recommendations of the Special Committee.

*Id.*

The Court finds these items to fall within the scope of discovery contemplated by subsection 5(c), as such information is relevant to "the procedures employed by the board in making its determination", which is the subject of the court's "inquiry [on a dismissal motion] on whether the Board acted in good faith and with due care in investigating the merits of the litigation." *PSE & G*, 173 N.J. at 291 (quoting *Levine v. Smith*, 591 A.2d 194, 214 (Del. 1991), *overruled on other grounds*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).

*In re Big Lots, Inc. S'holder Litig.*, 2017 U.S. Dist. LEXIS 76647 (S.D. Ohio May 19, 2017) provides useful guidance here. As in this case, *Big Lots* concerned discovery sought by shareholder derivative plaintiffs to oppose the defendants' motion to dismiss; specifically, "to challenge the SLC's independence, good faith review of the matter, and reasonableness of its investigation." *Id.* at *8. The *Big Lots* plaintiffs sought materials resembling the above, such as "documents the SLC reviewed and/or were cited in the SLC Report"; "documents relating to any of the interviews, inquiries or follow-ups made by the SLC or its counsel during its investigation, including any transcripts, recordings, notes or summaries"; and "documents relating to the SLC meetings, including any minutes thereof". *Id.* at *9-10. Observing that "the question is, 'in order to make all necessary arguments against dismissal,' what documents, if any, should the Plaintiffs be granted access to", the court largely granted the plaintiffs' requests, writing that there existed an

> extensive volume of information [that] was expressly relied upon by the SLC in drafting its Report and the Court finds the information could relate to the SLC's independence, good faith, and reasonableness. Further, without this information, "[P]laintiffs would find it difficult to assess the reasonableness either of the committee's investigation or the conclusions it reached based upon the materials before it."

*Id.* at *10-12 (quoting *Ross v. Abercrombie & Fitch Co.*, 2008 U.S. Dist. LEXIS 24466, at *8 (S.D. Ohio March 14, 2008)) and citing "[c]ourts across the country [that] have found that plaintiffs are entitled to review the types of documents Plaintiffs seek here", such as *Sarnacki ex rel. Smith & Wesson Holding Corp. v. Golden*, 4 F. Supp. 3d 317, 321 (D. Mass. 2014), *aff'd sub nom. Sarnacki v. Golden*, 778 F.3d 217 (1st Cir. 2015), where the court ordered limited discovery consisting of, *inter alia*, "all documents relied on by the SLC in its final report" so that plaintiffs could "investigate the adequacy of the SLC").

22

*Big Lots* is apposite as to the six categories of information listed above. As there, the Court emphasizes that it is "not allowing unfettered discovery on the SLC process and procedures"; however, these "discovery requests . . . are sufficiently limited" to permit Plaintiffs to oppose Defendants' motion to dismiss on good faith and reasonableness grounds without encroaching upon the Board's substantive decisions or wading into merits discovery. *Id.* at *12-13; *see also* ECF No. 49 at 18 ("[Plaintiffs are] not asking how information was substantively processed. . . . We're asking what was the process? Who did you speak to? What did you ask them? What documents did you look at? How did you make your determination?").

This leaves Plaintiffs' fifth, eighth, ninth and fourteenth items. The first three categories — engagement letters, documents concerning the likelihood of success on the merits, and communications regarding Defendants' alleged underlying wrongdoing — are both somewhat less directly related to good faith and reasonableness and more likely to implicate privileged materials than are the prior group of items, but nonetheless could bear upon discoverable information relevant to Defendants' dismissal motion. The Court will therefore permit such discovery. As to the final item, the Court is unable to discern — nor have Plaintiffs explained — how insurance policies and related documents may illuminate the Board's good faith or reasonableness. The Court will therefore deny this request.

Finally, Plaintiffs seek the depositions of Committee members (and named defendants) Martina Hund-Mejean, Christine A. Poon, and Michael Todman. The Court will grant this request, subject to the condition stated immediately below. *See, e.g.*, *Abbey v. Comp. & Commc'ns Tech. Corp.*, 1983 Del. Ch. LEXIS 511, at *8 (Del. Ch. Apr. 13, 1983) (permitting "the deposition of the Special Litigation Committee with a view toward establishing just what was done in the course of its investigation, and why").

The Court emphasizes that Plaintiffs are not entitled to *carte blanche* discovery of all information falling within the above categories. As noted, the relevant inquiry "is not into the substantive decision of the board, but rather is into the procedures employed by the board in making its determination." *Coleman*, *supra*. Accordingly, Plaintiffs are entitled to the discovery delineated above, so long as the information sought *also* speaks to the Board's processes and procedures in reaching its determination, to the exclusion of information concerning the Board's substantive decisions. And, per subsection 5(c), this discovery shall not include "work product, privileged communications, or testimony of attorneys who advised or assisted the person or group making the determination."

## VIII.    Matters Concerning Defendants' Motion to Dismiss

Plaintiffs raise two points relating to Defendants' pending motion to dismiss. One is that Defendants' submission of materials outside the pleadings entitles Plaintiffs to the discovery they now seek, by way of FED. R. CIV. P. 12(d)'s provision that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." This argument is not properly before the Court. All the authority cited by Plaintiffs concerns courts considering motions to dismiss choosing to convert those applications to summary judgment motions. *See* ECF No. 31-1 at 28-29. Plaintiffs do not cite any authority supporting the notion that Rule 12(d) entitles them to relief on this motion, and the Court will not permit Plaintiffs to use the rule as a back door to obtaining discovery.[15]

Finally, Plaintiffs request that Defendants' motion to dismiss be held in abeyance pending their receipt of the discovery sought herein. The parties have previously stipulated, and the Court

---

[15] The Court likewise denies this argument to the extent it seeks to convert Defendants' motion to dismiss to a summary judgment motion, which, as above, is the province of the motion to dismiss.

has ordered, "that Plaintiffs shall not be required to file an opposition or otherwise respond to the Defendants' . . . motion to dismiss until plaintiffs' . . . motion for limited discovery has been resolved." ECF No. 10 at ¶ 14. Being that the purpose of the discovery Plaintiffs seek is to enable them to oppose the motion to dismiss, the Court will continue to hold Defendants' motion to dismiss in abeyance and will direct the parties to submit a proposed schedule governing the discovery discussed herein and further briefing on the motion to dismiss.

IX.    **Conclusion**

An Order consistent with this Opinion follows.

Dated: May 3, 2022

*/s/ Cathy L. Waldor*
Cathy L. Waldor, U.S.M.J.